IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COMMISSIONER OF LABOR
AND INDUSTRY to the Use and
Benefit of Valerie Steele,   *

   *Plaintiff*,   *

v.   *   Civil Action No. RDB-25-1746

THE WASHINGTON   *
METROPOLITAN AREA
TRANSIT AUTHORITY (WMATA),   *

   *Defendant*.   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff, the Commissioner of Labor and Industry ("the Commissioner") of the Maryland Department of Labor, brings this putative enforcement action against the Defendant the Washington Metropolitan Area Transit Authority ("WMATA") on behalf of Valerie Steele, the former Director of Occupational Safety and Health for WMATA from October 2021 to October 16, 2023.[1] *See generally* (ECF No. 1). The Commissioner claims that WMATA terminated Steele in violation of § 5-604(b) of Maryland's Occupational Safety and Health Act of 1973, Md. Code Ann., Lab. & Empl. §§ 5-101 *et seq.* (West 2025). The Commissioner seeks injunctive relief, including reinstatement of Steele to her former position, back pay, and

---

[1] Section 5-604(d) of the Maryland Occupational Safety and Health Act of 1973, Md. Code Ann., Lab & Empl. §§ 5-101 *et seq.*, charges the Commissioner with suing employers that the Commissioner has found to have violated the Act. This Court previously explained this statutory enforcement basis in its Memorandum Order denying the Commissioner's Motion to Remand (ECF No. 8). *See* (ECF No. 12). For further explanation, see *infra* pages 4–5 of this Opinion.

compensation for loss of fringe benefits. (*Id.*) Now pending is WMATA's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) (ECF No. 7), in which it claims that this Court lacks jurisdiction to hear the case because WMATA enjoys sovereign immunity. The Court has reviewed the parties' submissions; no hearing is necessary. See Loc. R. 105.6 (D. Md. 2025). For the following reasons, the Court DENIES WMATA's Motion to Dismiss (ECF No. 7).

## BACKGROUND

### I. Factual History

#### a. WMATA and the WMATA Compact

Defendant, the Washington Metropolitan Area Transit Authority ("WMATA"), runs mass transit for the District of Columbia, northern Virginia, and southern Maryland. *See Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205–06 (4th Cir. 2002). It is the second busiest transit system in the United States. *Metrorail*, Wash. Metro. Area Transit Auth., https://www.wmata.com/service/rail/ (last visited Feb. 12, 2026). For the 2025 fiscal year, WMATA had more than 13,000 employees and a total budget of five billion dollars. Wash. Metro. Area Transit Auth., FY2025 Budget 3, 115 (2024). Metrorail, WMATA's flagship transit service, operates six lines across ninety-eight stations, serving more than 600,000 customers per day. *Metrorail*, Wash. Metro. Area Transit Auth., *supra*.

WMATA is an interstate government body, created by a 1966 compact (the "Compact" or "WMATA Compact") between the Commonwealth of Virginia, the State of Maryland, and

the District of Columbia.[2] The WMATA Compact is codified in the laws of Virginia, Maryland, and the District of Columbia,[3] and the body is an agency of each of its signatories. Va. Code Ann. § 33.2-3101 (2026); Md. Code Ann., Transp. § 10-204 (West 2025); D.C. Code § 9-1107.01 (2026). Additionally, Congress consented to the Compact in 1966. *See* 80 Stat. 1324.

Three sections of the Compact are particularly relevant to this Motion. First, § 12 lists WMATA's general powers. Md. Code Ann., Transp. § 10-204(12). Among other enumerated powers, § 12 states that WMATA can "[s]ue and be sued," *id.* § 10-204(12)(a); "[c]reate and abolish offices, employments and positions . . . as it deems necessary for the purposes of [WMATA], and fix and provide for the qualification, appointment, removal, term, tenure, compensation, pension and retirement rights of its officers and employees without regard to the laws of any of the signatories," *id.* § 10-204(12)(g); and "[e]stablish, in its discretion, a personnel system based on merit and fitness," *id.* § 10-204(12)(h). Second, § 77 of the Compact states that WMATA is "exempt from all laws, rules, regulations and orders of the signatories and of the United States otherwise applicable to such transit service and persons," but that

---

[2] Under the Compact Clause of Article I of the Constitution, "each State possesses the sovereign authority to enter into a compact with another State, subject to Congress's approval." *New York v. New Jersey*, 598 U.S. 218, 221 (2023) (citing U.S. Const. art. I, § 10).

[3] Because the District of Columbia did not enjoy its current form of home rule until Congress enacted the District of Columbia Self-Governance and Governmental Reorganization Act of 1973, Pub. L. No. 93-198, 87 Stat. 774, when Congress consented to the interstate compact between Virginia, Maryland, and D.C. in 1966, it also *enacted* the Compact as to the District of Columbia. *See id.* ("Be it enacted . . . [t]hat the Congress hereby consents to, adopts and enacts for the District of Columbia [the WMATA Compact] . . . ."). After Congress granted the District of Columbia home rule in 1973, the WMATA Compact was codified in the District of Columbia Code. *See* D.C. Code § 9-1107.01 (2026).

3

"laws, rules, regulations and orders relating to inspection of equipment and facilities, safety and testing shall remain in force and effect." *Id.* § 10-204(77). Third, and finally, § 80 lists WMATA's sovereign immunity. *Id.* § 10-204(80). It provides, "[t]he Authority shall be liable for its torts and contracts . . . committed in the conduct of any proprietary function, . . . but shall not be liable for any torts occurring in the performance of a governmental function."[4] *Id.*

### b. The Commissioner of Labor and Industry and the Maryland Occupational Safety and Health Act of 1973

Plaintiff, the Commissioner of Labor and Industry of the Maryland Department of Labor, is a Maryland government entity charged with enforcing the Maryland Occupational Safety and Health Act of 1973 (the "Act"), Md. Code Ann., Lab. & Empl. §§ 5-101 *et seq.* (West 2025). *See id.* § 5-201 (granting the Commissioner administration and enforcement powers). The Act is one of twenty-two State Plans approved by the federal Occupational Safety and Health Administration of the United States Department of Labor. *State Plans*, Occupational Safety & Health Admin., https://www.osha.gov/stateplans (last visited Feb. 12, 2026).

Section 5-604 of the Act, titled "[d]iscrimination against employee," provides, in relevant part, that an employer may not retaliate against an employee by discharging or

---

[4] The distinction between proprietary and governmental functions was explained by the United States Court of Appeals for the Fourth Circuit in its 2002 *Smith* decision. 290 F.3d at 206–09. At a basic level, the Fourth Circuit explained that an activity is governmental and not proprietary when it deals with discretion, planning, or the formulation of policy. 290 F.3d at 208 (citing *Griggs v. WMATA*, 232 F.3d 917, 921 (D.C. Cir. 2000)). This includes decisions of day-to-day management. *Id.* (citing *United States v. Gaubert*, 499 U.S. 315, 325 (1991)). Conversely, a ministerial decision is one that "involve[s] enforcement or administration of a mandatory duty at the operational level." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1138 (D.C. Cir. 2015).

otherwise discriminating against her because she files a complaint or brings a lawsuit under the Act, has testified or will testify in a lawsuit under the Act, or exercises a right under the Act. *Id.* § 5-604(b)(1)–(4). Subsection (c) states that an employee who believes that her employer has discharged her or otherwise discriminated against her in violation of subsection (b),[5] may bring a complaint to the Commissioner within thirty days of the alleged discrimination. *Id.* § 5-604(c)(1)–(2). Finally, § 5-604(d) tasks the Commissioner with enforcement upon the Commissioner's finding that an employee was retaliated against under subsection (b). Specifically, subsection (d) states, "[i]f, after investigation, the Commissioner determines that an employer . . . has violated subsection . . . (b) of this section, the Commissioner shall file a complaint to enjoin the violation, to reinstate the employee to the former position with back pay, or for further appropriate relief." *Id.*

### c. Valerie Steele's Employment and Complaint

This case arises out of the employment and termination of Valerie Steele, the former Director of Occupational Safety and Health for Defendant WMATA. *See generally* (ECF No. 3). In its Complaint, the Commissioner alleges that WMATA hired Valerie Steele on or about October 12, 2021. (*Id.* ¶ 10.) She worked at WMATA's Shady Grove location in Shady Grove, Maryland. (*Id.*) The Complaint avers that on or about October 11, 2023, a WMATA employee expressed concerns to Steele about possible lead contamination in one or more of WMATA's railway tunnels. (*Id.* ¶ 15.) The Commissioner alleges that Steele immediately alerted relevant WMATA safety personnel of the concern and took actions within her job description to

---

[5] This subsection, and subsection (d), also apply to discriminatory actions by an employer in violation of subsection (a) of § 5-604. Subsection (a) does not pertain to this case because it relates to employee medical information.

ensure the safety of employees who may have been affected by the supposed contamination. (*Id.* ¶¶ 15–17.) The Commissioner particularly alleges that Steele ordered that all maintenance activities be ceased until personal protective equipment could be provided to employees working in locations which may have been contaminated with lead. (*Id.* ¶ 15.) The Commissioner alleges that WMATA terminated Steele five days later, on October 16, 2023, without explanation. (*Id.* ¶ 18.) On November 17, 2023, Steele filed a complaint with the Commissioner, pursuant to § 5-604(c) of the Act. (*Id.* ¶ 21.) The Commissioner investigated and determined that Steele had a valid claim of retaliation under the Act. (*Id.* ¶ 22.)

## II.   Procedural History

On March 27, 2025, the Commissioner, being charged with enforcement of the Act, *see* § 5-201; *id.* § 5-604(d), filed this putative enforcement action on Steele's behalf in the Circuit Court for Baltimore City, Maryland. (*Id.* ¶¶ 1, 7.) The Commissioner alleges that WMATA violated § 5-604(b) of the Act when it terminated Steele on October 16, 2023. (*Id.* ¶ 23.) The Commissioner's Complaint claims that WMATA terminated Steele "because she reported concerns about WMATA employee exposure to lead dust in tunnels and ancillary rooms and requested that WMATA monitor employee exposure to potentially harmful chemicals." (*Id.*) The Commissioner seeks injunctive relief and money damages from WMATA, including reinstating Steele to her position, back pay, and compensation for loss of fringe benefits. (*Id.* at 1, 7.)

On June 2, 2025, WMATA filed a Notice of Removal in this Court pursuant to 28 U.S.C. § 1441 and § 1446. (ECF No. 1.) On June 16, 2025, the Commissioner filed a Motion to Remand the case to the Circuit Court for Baltimore City. (ECF No. 8.) This Court denied

6

the Motion to Remand by Memorandum Order on October 14, 2025, concluding that § 81 of the WMATA Compact provided the Court with original jurisdiction. (ECF No. 12.) Also on June 16, 2025, WMATA filed the pending Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 7.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. It is a plaintiff's burden to show that subject matter jurisdiction exists. *Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). When a defendant asserts that a plaintiff has failed to allege in the complaint facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). But when a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192. A district court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

7

**ANALYSIS**

The Commissioner alleges that WMATA violated § 5-604 of the Maryland Occupational Health and Safety Act of 1973 when it terminated Steele on October 16, 2023. (ECF No. 3 at 1.) WMATA moves to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1), raising two independent arguments. (*Id.*) First, it claims that § 80 of the Compact entitles it to sovereign immunity and deprives this Court of jurisdiction. (ECF No. 7-1 at 5–11 (citing Md. Code Ann., Transp. § 10-204(80)).) Second, and pursuant to §§ 12, 77, and 80 of the Compact, WMATA asserts that the Commissioner lacks authority to bring this suit because WMATA is not subject to the laws of its signatories, particularly the Maryland Occupational Safety and Health Act of 1973. (*Id.* at 11–12 (citing § 10-204(12), (77), (80)).)

In response, the Commissioner invokes the State's inherent power to enforce its own laws. (ECF No. 14.) The Commissioner argues that she is charged by Maryland law with enforcing the Act upon a finding of retaliation. (*Id.*) She also points to § 77 of the Compact, which states that WMATA is subject to the laws of the signatories "relating to inspection of equipment and facilities, safety and testing." (*Id.* (citing Md. Code. Ann., Transp. § 10-204(77)).) The Commissioner argues that § 77's inclusion of "laws . . . relating to . . . safety" necessarily includes § 5-604 of the Maryland Occupational Safety and Health Act. (*Id.*)

In essence, the Commissioner and WMATA argue about the scope and effect of §§ 77 and 80 of the Compact. This Court gives the undefined provisions of an interstate compact their plain and ordinary meaning. *Alabama v. North Carolina*, 560 U.S. 330, 340 (2010). Section 77 of the WMATA Compact does not use defined terms, so the Court gives the section its plain meaning. As noted above, the section states that WMATA is subject to the "laws, rules,

regulations and orders relating to inspection of equipment and facilities, safety and testing." § 10-204(77). WMATA does not argue that the Maryland Occupational Safety and Health Act is something other than a "law[] . . . relating to inspection of equipment and facilities, safety and testing." The ordinary meaning of § 77, then, would be that the Act, including § 5-604, applies to WMATA. Section 5-604 serves as both the substantive provision that WMATA allegedly violated by terminating Steele and the Commissioner's enforcement provision, requiring that she file suit against Steele's employer, WMATA. *See* Md. Code Ann., Lab & Empl. § 5-604(b); *id.* § 5-604(d). At this early stage of litigation, and without enjoying the benefit of discovery, the Commissioner has sufficiently pleaded subject matter jurisdiction by alleging that WMATA is subject to the Maryland Occupational Safety and Health Act; and by further alleging that the Act requires the Commissioner to file suit here.[6]

WMATA's Motion to Dismiss focuses on the termination of employees as a proprietary function and not a governmental one. (ECF No. 7-1 at 5–11.) Under this argument, WMATA asserts that it enjoys sovereign immunity under the plain text of § 80 of the Compact. (*Id.*) The Authority cites numerous cases from this Court and the United States District Court for the District of Columbia in which private plaintiffs, former employees of WMATA, sued their former employer for wrongful termination, demotion, or another adverse

---

[6] WMATA attempts to circumvent this conclusion by phrasing its 12(b)(1) challenge as factual as opposed to facial. (ECF No. 19 at 3.) As such, WMATA attaches to its Motion to Dismiss the declaration of another WMATA employee, which proffers facts related to Steele's termination. *See* (ECF No. 7-2). Specifically, the declaration alleges that Steele was terminated for poor performance and not for raising concerns about supposed lead contamination. (*Id.*) The Court's denial of WMATA's Motion to Dismiss, however, is based on a pure legal question about the scope of competing provisions in the Compact. Therefore, the distinction between facial and factual challenges is not material to this decision.

employment action.⁷ (*Id.* at 10–11.) In each of the cases that WMATA cites, the district court found that personnel decisions, including termination and demotion, were proprietary functions under § 80 of the Compact. (*Id.* at 10–11.) The courts accordingly found that sovereign immunity applied. (*Id.* at 10–11.)

While WMATA unquestionably enjoys some degree of sovereign immunity from suit under § 80 of the Compact, that immunity is not absolute. *See McFadden v. Wash. Metro. Area Transit Auth.*, No. GLS-19-629, 2021 WL 11652624, at *3 (D. Md. May 24, 2021). The tension in this case is what effect § 80 has when abutted WMATA's duties and responsibilities under Maryland law as set out in § 77. Moreover, this case is not one in which a former employee sues her former employer. Instead, Maryland styles this case as an enforcement action—one in which the Commissioner of Labor and Industry is charged by Maryland law with suing employers that she finds, after proper investigation, with having violated Maryland law, *see* Md. Code Ann., Lab. & Empl. § 5-604(d). (ECF No. 14 at 1, 6, 14, 16, 18.)

In turn, WMATA points to § 12 of the Compact, which, as noted above, gives the Authority the power, *inter alia*, to make and abolish offices and account for the removal of employees from their positions, *see* Md. Code Ann., Transp. § 10-204(12). (ECF No. 7-1 at 8.) WMATA argues that this provision, coupled with its sovereign immunity under § 80, provides it with immunity from suit. (*Id.*) Once again, these provisions run up against § 77 of the

---

⁷ *See Williams v. Wash. Metro. Area Transit Auth.*, No. 17-cv-00890 (APM), 2019 WL 2058723, at *7 (D.D.C. May 9, 2019); *Woods v. Wash. Metro. Area Transit Auth.*, No. PWG-18-3494, 2019 WL 3766508, at *3–4 (D. Md. Aug. 9, 2019), *aff'd*, 785 F. App'x 188 (4th Cir. 2019); *Battles v. Wash. Metro. Area Transit Auth.*, 272 F. Supp. 3d 5, 14–15 (D.D.C. 2017); *Taylor v. Wash. Metro. Area Transit Auth.*, 109 F. Supp. 2d 11, 12 n.2 (D.D.C. 2000).

Compact and its mandate that WMATA be subject to the Maryland "laws . . . relating to inspection of equipment and facilities, safety and testing."

Quite simply, the Maryland Commissioner contends that the termination of Valerie Steele arose out of her focus on a safety issue within the ambit of § 77 of the WMATA Compact from which WMATA is not exempt. *See generally* (ECF No. 1). WMATA insists that her termination was merely a personnel decision which falls within its discretion in the performance of its governmental function. *See generally* (ECF No. 7-1). Therefore, it argues that this termination falls under § 80 of the Compact providing for sovereign immunity. (*Id.*)

There is insufficient record in this case from which this Court can make a determination. Therefore, at this early stage of litigation, and without the benefit of discovery, WMATA's Motion to Dismiss (ECF No. 7) is DENIED.

## CONCLUSION

For the reasons stated above, WMATA's Motion to Dismiss (ECF No. 7) is DENIED.

A separate Order follows.

Date: February 17, 2026                              \_\_\_/s/_____
                                                    Richard D. Bennett
                                                    United States Senior District Judge